UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COMMUNITY HEALTH CENTER, INC. | : | |
| ET AL. | : | |
|       PLAINTIFFS | : | LEAD DOCKET 3:01CV146 (JBA) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, ET AL., | : | |
| | : | |
|       DEFENDANT. | : | JANUARY 15, 2004 |

## MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL

Pursuant to Rule 7 of the Local Rules of Civil Procedure for the District of Connecticut, and the Order of this Court dated January 7, 2004, the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services, hereby respectfully submits this memorandum in opposition to the motion of the Defendant, Patricia Wilson-Coker, to compel production of documents. Defendant's motion should be denied for the reasons set forth below.

I.     Relevant Procedural Background

This action was filed on January 26, 2001 by the Plaintiff, Community Health Center, Inc. (CHC), to challenge the method by which the State of Connecticut reimburses CHC for medical services provided to those in need under the federal Medicaid statute, 42 U.S.C. §§ 1396-1396v (2000). On November 30, 2001, this Court granted CHC's motion for summary judgment and enjoined the Defendant from

NO ORAL ARGUMENT IS REQUESTED

applying the challenged payment standards.  An appeal followed, resulting in the reversal and remand of the action.   Since the issuance of the mandate on March 28, 2003, the parties have been engaging in discovery, including seeking information from the  United States Department of Health and Human Services ("HHS" or "Agency"), Centers for Medicare and Medicaid Services ("CMS"), a non-party to this action.

On May 13, 2003, the Defendant issued a subpoena to CMS seeking the production of five (5) categories of documentation concerning a "Final Rule" by the Health Care Financing Administration (HCFA) entitled "Medicare Program: Payment for Federally Qualified Health Center Services".  On August 7, 2003, HHS Office of General Counsel produced responsive documentation and also withheld documents based on certain privileges, including the attorney-client privilege, the attorney work product privilege, and the deliberative process privilege.  See Defendant's Memorandum in Support of Motion to Compel dated November 7, 2003 ("Defendant's Memorandum"), Exhibit B.   Thereafter, depositions of CMS officials were taken.  On October 20, 2003, HHS Office of General Counsel produced additional documentation in response to the Defendant's subpoena.  See Defendant's Memorandum, Exhibit C. In connection with this disclosure, and at the request of counsel, HHS provided a privilege log for those documents which HHS was withholding, including those withheld on the basis of the deliberative process privilege.  The documents concerning the Defendant's request consist of seventeen (17) items which are set forth in the privilege log at pages 000251 through 000631.  See Declaration of Leslie V. Norwalk, attached hereto, Exhibit A.

On November 7, 2003, Defendant moved to compel HHS to produce these seventeen (17) documents, arguing that HHS has not demonstrated that the deliberative process privilege is applicable, and, in the alternative, that HHS should be compelled to produce the documents even in the event that the privilege was properly invoked.  HHS now submits this memorandum in opposition to Defendant's motion to compel, and requests that the motion be denied in its entirety.

II.     Argument: All of the Contested Documents Are Protected From Disclosure by the Deliberative Process Privilege

    A.     The Deliberative Process Privilege Applies to Predecisional Materials That Are Part of the Agency's Deliberations Resulting In Final Action

The deliberative process privilege is derived from the work-product privilege, and protects from disclosure intra-agency or inter-agency documents which reflect advisory opinions, recommendations and deliberations that are part of a process by which governmental decisions and policies are formulated.  Dipace v. Goord, 218 F.R.D. 399, 403 (S.D.N.Y. Nov 12, 2003) (citing Tigue v. United States Dep't of Justice, 312 F.3d 70, 76 (2d Cir.2002), cert. denied, --- U.S. ----, 123 S.Ct. 2214 (2003) and Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001)).    In other words, the privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  Dipace, 218 F.R.D. at 403 (quoting Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999)).  The privilege is predicated upon "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and

frank discussion among those who make them within the Government." Dipace, 218 F.R.D. at 403 (quoting Klamath Water Users Protective Ass'n, 532 U.S. at 8-9).

In order for a document to be protected by the privilege, the withholding agency must show that the document is an inter-agency or intra-agency document that is both "predecisional" and "deliberative." Tigue, 312 F.3d at 76. A document is "predecisional" when it is "prepared in order to assist an agency decisionmaker in arriving at his decision." Hopkins v. United States Dep't of Hous. & Urban Dev., 929 F.2d 81, 84 (2d Cir.1991)(quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)).   A document is "deliberative," when it is "actually ... related to the process by which policies are formulated." Hopkins, 929 F.2d at 84 (quoting Jordan v. United States Dep't of Justice, 591 F.2d 753, 774 (D.C.Cir.1978) (en banc)).

### B.     HHS Has Met the Requirements for Assertion of the Deliberative Process

In order to invoke the deliberative process privilege as a ground for resisting disclosure in discovery, a litigant must follow certain procedures. LNC Investments, Inc. v. Republic of Nicaragua, No. 96 CIV. 6360 JFK (RLE), 1997 WL 729106, at * 2 (S.D.N.Y. Nov 21, 1997)(citing Mobil Oil Corp. v. Dep't of Energy, 520 F.Supp. 414, 416 (N.D.N.Y.1981)).

> First, the claim of privilege must be asserted by the head of the governmental agency which has control over the information to be protected, after personal review of the documents in question. Id. Alternatively, the head of the agency may designate a subordinate in high authority who is competent to assess the confidential nature of the agency's documents. Id. Second, the information or documents sought to be shielded must be identified and described. Id. Third, the agency must provide "precise and certain" reasons for asserting confidentiality over the requested information. Id.; See also Coastal Corp. v. Duncan, 86 F.R.D. 514, 517- 19 (D. Del.1980); and United States v. Davis, 131 F.R.D. 391, 400, n. 5 (S.D.N.Y.1990).

LNC Investments, Inc. 1997 WL 729106, at * 2.  In this case, the privilege has been formally asserted by an appropriate department official, and all other prerequisites to CMS' privilege claims have been met.

>    1.   **The Claim of Privilege Has Been Asserted by an HHS Official Who Has Control over the Information to Be Protected, after Personal Review of the Documents in Question**

The deliberative process privilege has been invoked by the Acting Deputy Administrator and Chief Operating Office of the Centers for Medicare & Medicaid Services (CMS), Leslie V. Norwalk.  In her official capacity, Ms. Norwalk shares overall responsibility for the administration of all federal health care financing programs under Titles XI, XVIII (i.e., Medicare), XIX (i.e., Medicaid) and XXI of the Social Security Act.  See attached Declaration of Leslie V. Norwalk ("Norwalk Dec."), ¶¶ 1,  2.  Ms. Norwalk's authority extends over the Agency's records, and she has personally considered and satisfied herself as to the nature and types of documents at issue.  Id., ¶ 6.  Ms. Norwalk is familiar with this action and with the subject requests for production.  Norwalk Dec., ¶¶ 3-6. Inasmuch as the documents here sought by Defendant were generated during agency rulemaking under the subject regulations, the privilege has been asserted by the appropriate official.  LNC Investments, Inc. 1997 WL 729106, at * 2.

### 2. The Documents Sought to Be Shielded Are Appropriately Identified and Described

HHS has also satisfied the second requirement, as the Norwalk Declaration and its attachment describe the documents for which protection is sought with enough specificity to enable the Court to evaluate the applicability of the privilege. Norwalk Dec., ¶ 7 and Exhibit A. The withheld documents are either drafts of regulations, comments on those drafts, or other materials discussing the policies addressed (or those that might have been addressed) in the regulations, such as internal agency memoranda, briefings, notes and agenda for staff meetings. Id. Specifically, the documents over which the deliberative process privilege is being asserted "consist of draft regulations or portions thereof, notes or memoranda commenting on draft regulations, handwritten ('markup') comments on draft regulations, issue papers concerning policies addressed in draft regulations, and other materials prepared to assist the agency's formulation of policies published in the proposed or final Federally Qualified Health Center ("FQHC") regulations." Id. at ¶ 7. The descriptions of the documents on Exhibit A show that the documents fall into one of the foregoing categories. Therefore, the Agency has properly identified and described the documents sought to be shielded from production.

### 3. HHS Has Provided Precise and Certain Reasons for Asserting Confidentiality over the Requested Information

The final requirement for invoking the deliberative process privilege is for the Agency to explain why the specific documents properly fall within the privilege. Ms. Norwalk's declaration satisfies this criterion because it contains specific reasons why the confidentiality of the withheld documents should be maintained. Ms. Norwalk

has averred that CMS depends heavily on the free exchange of ideas and information within the Agency to develop the best policies that it can. Norwalk Dec., ¶¶ 8-11. This can sometimes involve debates concerning exceptionally novel or unpopular proposals. Id., at ¶ 11. Moreover, agency personnel engage in these debates with the understanding that their views will remain confidential. Id. If this information were disclosed, however, it would inevitably lead to strong pressures to temper candor and suppress the type of searching debates that is essential to high quality decisionmaking. Id.

Ms. Norwalk further expresses her concern that release of the documents sought by Defendant might propel the Agency into a time-consuming and unproductive defense of the policies that the Agency did not adopt. Norwalk Dec. ¶ 10. Such a dialogue would be unproductive. The airing of Agency views concerning rejected policies would also make it more difficult for the Agency to revisit its earlier policy decisions or correct its own mistakes.

Given that Ms. Norwalk has articulated important reasons why disclosure of the documents would be inconsistent with the purposes of the deliberative process privilege, the Agency has satisfied its burden of demonstrating that the privilege is applicable to the documents it has withheld.

   C.   The Documents That Have Been Withheld by the Agency Are Protected by the Deliberative Process Privilege

The foregoing clearly demonstrates that the documents withheld by HHS are protected by the deliberative process privilege. It is not disputed that the draft regulations and related documents were prepared prior to the publication of either the

proposed or final regulation. Norwalk Dec., ¶ 7. For this reason, the documents are predecisional. Further, the listed documents are almost exclusively comprised of draft portions of the regulations and Agency staff comments on those drafts. Id. See also Exhibit A to the Norwalk Declaration. Courts have been particularly protective of draft documents because they are inherently deliberative in nature. LNC Investments, Inc., 1997 WL 729106, at * 1 (citing Lead Industries Assoc. v. OSHA, 610 F.2d 70, 86 (2d Cir. 1979)).

The Acting Deputy Administrator's declaration establishes that the draft documents consist of internal communications containing opinions and advice regarding legal and policy issues that were prepared during the development of the regulations. Norwalk Dec. at ¶¶ 8, 9. Moreover, Ms. Norwalk makes clear that the Agency's give-and-take discussion of the regulatory issues occurs at various levels in the Agency before the regulations are submitted for final approval. Id. Indeed, because these documents have an integral and indispensable role in the process by which the agency develops its final policies, id. at ¶¶ 7-11, they are the agency's deliberative process. See e.g. National Wildlife Federation v. U.S. Forest Service, 861 F.2d 1114, 1122 (9th Cir. 1988)(it would be unreasonable to contend that documents that "provide comments and recommend changes in the draft [agency plans]" were not deliberative).

Disclosure of the Agency's comments on the various drafts and proposals would reveal the process by which the draft evolved into the published proposed or final regulation. Thus, agency comments likewise fall within the protection of the privilege. Indeed, agency personnel often convey their comments on an issue by editing or

"marking up" a copy of the draft document.  Norwalk Dec., ¶¶ 8-9.  Further, documents which reflect the "give-and-take" of the administrative deliberative process are protected by the deliberative process privilege.  Martin v. New York City Transit Authority, 148 F.R.D. 56, 59 (E.D.N.Y. 1993)(citing Mary Imogene Bassett Hosp. v. Sullivan, 136 F.R.D. 42, 47-48 (N.D.N.Y.1991)).

     Defendant argues that the Agency has failed to provide sufficient information to establish the applicability of the deliberative process privilege.  See Defendant's Memorandum at pp. 4-5.  However, "[t]he court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect." United States v. Reynolds, 345 U.S. 1, 8 (1953).  Specific recitations of the issues or policies that the draft documents address would itself reveal a part of the deliberations that the privilege is designed to protect.  In any event, any question as to the deliberative nature of the documents is resolved by Ms. Norwalk's description of the process by which agency regulations, such as those at issue here, are developed for publication.  Draft language for a proposed or final rule is circulated among various levels of CMS and HHS personnel before final approval.  Norwalk Dec. at ¶ 7.  The underlying policy issues are thoroughly debated by agency components having expertise in the area.  Id. "Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process." NLRB v. Sears Roebuck & Co., 421 U.S. 132, 151 (1975).

Here, the Acting Deputy Administrator's declaration and accompanying description of the documents show that the documents in question are both predecisional and deliberative. The Acting Deputy Administrator also has determined that disclosure of the withheld documents would harm the effectiveness of the Agency's decisionmaking process and its ability to develop the best administrative policies. Norwalk Dec., ¶¶ 8, 10-11. Accordingly, the documents at issue are subject to the deliberative process privilege and thus protected from disclosure.

> D. **Defendant's Alleged Need for the Privileged Documents Does Not Outweigh the Harm Flowing From Disclosure of the Documents**

Once a government agency has established that the documents at issue are privileged, a court must "strike a balance between the public interest in disclosing the documents and the government's interest in protecting them." LNC Investments, Inc. 1997 WL 729106, at * 2 (citing In re Franklin Nat'l Bank Sec. Litigation, 478 F.Supp. 577, 583 (E.D.N.Y. 1979)). Defendant argues that "the balance clearly tilts in favor of disclosure". See Defendant's Memorandum at p. 5. However, Defendant has made no such showing.

In striking the appropriate balance, a court must consider:

(1) the interest of the private litigant; (2) the need for accurate judicial fact finding; (3) the public's interest in learning how effectively the government is operating. See Coastal Corp. [v. Duncan], 86 F.R.D. [514], 517-19 [D. Del. 1980)]. In addition, courts must also consider: (4) the relevance of the evidence sought; (5) the availability of other evidence; (6) the role of the government in the litigation and issues involved; and (7) the impact on the effectiveness of government employees. See In re Franklin Nat'l Bank Sec. Litigation, 478 F.Supp. at 583. Finally, the governmental entity may waive the privilege either explicitly or by its actions. See Reynolds, 345 U.S. at 12; United States v. Continental Can Co., 22 F.R.D. 241, 248 (S.D.N.Y.1958); Ghana Supply Comm'n v. New England Power Co., 83 F.R.D. 586 (D. Mass. 1979).

LNC Investments, Inc. 1997 WL 729106, at * 2.  See also Capri v. Murphy, No. B-80-571 (PCD)), 1985 WL 6364, at * 5 (D. Conn. Jan 04, 1985), aff'd, 895 F.2d 1411 (2d Cir. 1989).

Defendant submits that the Agency's interest in protecting the documents is insufficient in the face of the possibility that the information sought "might shed additional light on the utilization of the 4200 visit physician productivity standard by the Medicare program for FQHC payment," the sole issue in this case in Defendant's view. See Defendant's Memorandum at p. 5.  However, Defendant has failed to establish that her interest is greater than the well-illustrated interest of the Agency in protecting such pre-decisional and deliberative information.  In addition, it is not clear how the production of "predecisional" documents are of any significant relevance, as they are different from the regulations actually at issue.  Defendant may speculate that the privileged documents would illuminate the issues.  But this too would be insufficient to meet her burden.  Even if the privileged documents would shed some light on the issues, Defendant's need for the documents plainly cannot outweigh the important governmental interests underlying the deliberative process privilege.

III.     Conclusion

     For the foregoing reasons, it is respectfully requested that the Defendant's Motion to Compel documents from the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services, be denied.

                                    Respectfully submitted,

                                    KEVIN J. O'CONNOR
                                  UNITED STATES ATTORNEY

                                  LAUREN M. NASH, ct01705
                                  ASSISTANT U.S. ATTORNEY
                                  P.O. BOX 1824
                                  NEW HAVEN, CT  06508
                                  (203) 821-3700

CERTIFICATION

This is to certify that a copy of the within and foregoing has been mailed, postage prepaid, on this 15th day of January, 2004, to:

Thomas J. Ring
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

James L. Feldesman, Esq.
Jennifer B. Pennington, Esq.
Feldesman, Tucker, Leifer, Fidell & Bank LLP
2001 L St., NW
Second Floor
Washington, DC 20036

Richard R. Brown, Esq.
Steven William Varney, Esq.
Brown, Paindiris & Scott
100 Pearl St., Ste 1100
Hartford, CT 06103

Everett E. Newton, Esq.
Louis B. Todisco, Esq.
Marilyn Beth Fagelson, Esq.
Murtha Cullina LLP
Cityplace I, 185 Asylum St.
Hartford, CT 06103-3469

_____
LAUREN M. NASH
ASSISTANT U.S. ATTORNEY