IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------X
:
COMMUNITY HEALTH CENTER, INC.      :   3:01 CV 146 (JBA)[1]
:
:
v.                                 :
:
:
STATE OF CONNECTICUT, ET AL.       :   FEBRUARY 27, 2004
------------------------------------------------------------X

RULING ON PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Although familiarity with the factual and procedural history of this complex litigation is presumed, a brief recitation of the prior proceedings follow. Plaintiff Community Health Center, Inc. ["CHCI"], a federally qualified health center, initiated this action on January 26, 2001 (Dkt. #1), and on May 15, 2001 filed its Amended Complaint (Dkt. #20) asserting the following counts: the State's proposed plan amendment to the federally qualified health center payment regulations violates applicable federal regulations as the State plan amendment reduces CHCI's costs of physician care pro rata by any amount of CHCI's total average annual physician visits are below an average of 4,200 (Count One)(at 2-16); the reduction of payments to federally qualified health centers based on the change of expected visits to 4,200 is unlawful under the Medicare and Medicaid statutes (Count Two)(at 16-17); and the Health Care Financing Administration has not satisfied its burden of showing that the new rates are reasonable and adequate to meet the costs incurred in accordance with applicable laws, regulations and safety standards (Count Three)(at 17-18).

Defendants, the State of Connecticut and Patricia Wilson-Coker, Commissioner of the State of Connecticut Department of Social Services, filed their Answer to the Amended

---

[1]On August 26, 2003, this case was consolidated with 3:02 CV 626 (JBA). (Dkt. #78).

Complaint on June 26, 2001. (Dkt. #25). On November 30, 2001, United States District Judge Janet Bond Arterton granted CHCI's Motion for Summary Judgment and enjoined defendants from applying the challenged payment standards. Community Health Ctr., Inc. v. Wilson-Coker, 175 F. Supp. 2d 332 (D. Conn. 2001). (See also Dkt. #63). Defendants filed their appeal on January 2, 2002 (Dkt. #65) and on March 28, 2003, the United States Court of Appeals reversed and remanded the case for further proceedings. Community Health Ctr., Inc. v. Wilson-Coker, 311 F.3d 132 (2d Cir. 2002). (See also Dkt. #72).

Pending before the Court is defendants' Motion for Order to Compel Production of Documents and brief in support[2] (Dkts. ##83 & 85), filed November 10, 2003, to which the non-party Centers for Medicare and Medicaid Services ["CMS"] of the United States Department of Health and Human Services ["HHS"] filed a brief in opposition on January 15, 2004. (Dkt. #94).[3] Defendants filed their reply brief on February 6, 2004. (Dkt. #95). On December 5, 2003, Judge Arterton referred the file to this Magistrate Judge to supervise all discovery, including the pending motion. (Dkt. #88).[4]

## I. FACTUAL BACKGROUND

Plaintiff has filed the present action against the State of Connecticut questioning the use of productivity screens which govern Medicare payments to federally qualified health

---

[2] The following exhibits are attached: copy of the subpoena to the Unites States Department of Health & Human Services, Centers for Medicare & Medicaid Services, dated May 13, 2003 and attachment (Exh. A); copy of correspondence between counsel, dated August 7, 2003 (Exh. B); copy of correspondence between counsel, dated October 20, 2003 and copy of privilege log. (Exh. C).

[3] Attached is another copy of the privilege log. (Exh. A). (See also Dkts. ##87, 89, 92-93).

[4] By agreement of counsel, all Phase I discovery will be completed within thirty days after the production of all documents ordered in any ruling on the pending motion, if any such production is ordered. (Dkts. ##84 & 91).

centers, the disbursement of which is administered by the State. (Dkts. ##1 & 20). On May 13, 2003, defendants subpoenaed the CMS office in Boston for records related to two comments and two responses published in the Federal Register on April 3, 1996 regarding the payment rates for federally qualified health centers. (Dkt. #85, Exh. A). The requested documents relate to the "use of productivity standards in connection with establishing payment rates for federally qualified health center . . . services," like those of CHCI. (Dkt. #85, at 1). In response to the subpoena, on August 7, 2003 and October 20, 2003, CMS produced most of the documents and provided a privilege log for documents withheld on the basis of attorney-client privilege, the attorney work product privilege, and the deliberative process privilege. (Dkt. #85, at 2-3 & Exhs. B-C; Dkt. #94, at 2). On October 21, 2003, counsel for CMS informed defense counsel that additional documents responsive to the subpoenas exist and the "last seventeen documents listed on page four of the privilege log, . . ., relate to the Federal Register comments and responses that are the subject of . . . defendant's document production subpoena." (Dkt. #85, at 3).

Defendants contend that CMS has not demonstrated that the deliberative process privilege applies to the documents in question (id. at 3-5); and even if the privilege does apply, this Court should engage in a balancing test to determine if defendants' need for the requested information outweighs the policy reasons supporting the application of the privilege as such balancing would reveal that CMS should be required to disclose the documents. (Id. at 5).

CMS counters that (1) all of the contested documents are protected from disclosure by the deliberative privilege process as CMS has met the dual predecisional and deliberative requirements necessary to invoke the privilege (Dkt. #94, at 3-4); (2) the proper HHS official who has control over the information has personally reviewed the documents (id. at 4-5);

(3) the documents sought to be shielded are identified and described in the privilege log (id. at 6); (4) HHS has provided precise and certain reasons for asserting confidentiality over the requested information (id. at 6-7); (5) the documents withheld are protected by the deliberative process privilege (id. at 7-10); and (6) defendants' alleged need for the privileged documents does not outweigh the harm flowing from disclosure of the documents. (Id. at 10-11).

In response, defendants contend that since CMS adopted the 4200 visit productivity screen for federally qualified health center physicians in 1992, "it is far from undisputed or clear that the seventeen documents at issue are 'predecisional'" (Dkt. #95, at 2); the deliberative process privilege does not extend to materials related to the explanation, interpretation or application of an existing policy and does not cover factual material, even if used in the determination of policy (id.); and because plaintiff claims that there is no rational basis for the utilization of the 4200 visit physician productivity standard, "[a]ny information shedding additional light on the rationale for the continued use of this standard by CMS would be of obvious importance and would be unavailable for any other source." (Id. at 3). Defendants request an order from this Court compelling CMS to produce these seventeen documents, or alternatively, an order to submit the documents to the Court for in camera review to determine whether the deliberative process privilege should prevent the disclosure of the documents. (Dkt. #85, at 6; Dkt. #95, at 3-4).

## II.   DISCUSSION

"The deliberative process privilege protects the decisionmaking processes of [agencies of] the executive branch of the government from discovery in civil actions." LNC Invs. v. Republic of Nicaragua, 1997 WL 729106, at *1 (S.D.N.Y. Nov. 21, 1997)(multiple citations omitted).  The privilege protects documents which "reflect the personal opinions of

the writer rather than the policy of the agency" so that agency officials can talk candidly among themselves, knowing that their comments cannot be subject to discovery. DiPace v. Goord, 218 F.R.D. 399, 403 (S.D.N.Y. 2003)(internal quotations & citations omitted).

The deliberative process privilege protects documents which are "predecisional" and "deliberative." Hopkins v. United States Dep't of Hous. & Urban Dev., 929 F.2d 81, 84 (2d Cir. 1991)(citations omitted). A document is "predecisional" when it is "prepared in order to assist an agency decisionmaker in arriving at his decision." Id. (internal quotations & citation omitted). In order to be "predecisional," "the agency need not show ex post that a decision was made, it must be able to demonstrate that, ex ante, the document for which [the deliberative process] privilege is claimed related to a specific decision facing the agency." DiPace, 218 F.R.D. at 404, quoting Tigue v. United States Dep't of Justice, 312 F.3d 70, 80 (2d Cir. 2002)(additional citations omitted), cert. denied, 123 S. Ct. 2214 (2003). The document must also be "deliberative," or "actually . . . related to the process by which policies are formulated." Hopkins, 929 F.2d at 84 (internal quotations & citation omitted). The privilege does not protect factual material, and "[w]henever possible, facts that are separable from the privileged portion of a document should be disclosed." LNC Invs., 1997 WL 729106, at *2; see also Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999).

Discovery in federal actions is necessarily broad, and it is apparent from even a cursory review of the seventeen listed documents listed in the deliberative process privilege log that they are relevant to the present litigation, but whether these documents are discoverable is an entirely different inquiry. See National Congress for Puerto Rican Rights v. City of New York, 194 F.R.D. 88, 92 (S.D.N.Y. 2000). Even if the deliberative process privilege applies, however, the court must still engage in a balancing test to weigh the

5

litigant's need for the document against the potential harm which could result from disclosure. See In re Grand Jury Subpoena dated August 9, 2000, 218 F. Supp. 2d 544, 553 (S.D.N.Y. 2002). Courts must consider:

> (1) the interest of the private litigant; (2) the need for accurate judicial fact finding; (3) the public's interest in learning how effectively government is operating; . . . (4) the relevance of the evidence sought; (5) the availability of other evidence; (6) the role of the government in litigation and issues involved; and (7) the impact that disclosure might have on the effectiveness of government employees.

LNC Inv., 1997 WL 729106, at *2 (multiple citations omitted). See also In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577, 583 (E.D.N.Y. 1979).

If defendants' need for the documents is significant, but there is a potential harm which could result from disclosure, redacting the seventeen documents at issue could preserve defendants' present interests in the current litigation and CMS's need to maintain efficient agency operation. This Court is mindful, however, that redaction poses problems in itself: "Disclosing factual segments . . . would reveal the deliberative process . . . by demonstrating which facts in the massive rule-making record were considered significant by the decision-maker and those assisting [him or] her. Lead Indus. Assoc., Inc. v. Occupational Health & Safety Admin., 610 F.2d 70, 85 (2d Cir. 1979)(citation omitted). Redaction, by emphasizing certain facts and not others, could reveal an agency employee's deliberative process by illustrating what facts were not central to the decision. See Washington Research Project, Inc. v. Department of Health, Educ. & Welfare, 504 F.2d 238, 250-51 (D.C. Cir. 1974), cert. denied, 421 U.S. 963 (1975).

This Magistrate Judge, however, will accord appropriate deference to the role of the agency decisionmakers in the present action. As the Second Circuit has cautioned in its decision on appeal in this case: "We take care not lightly to disrupt the informed judgments of those who must labor daily in the minefield of often arcane policy, especially given the

substantive complexities of the Medicaid statute." 311 F.3d at 138. This deference is especially applicable in cases where "a highly expert agency administers a large and complex regulatory scheme in cooperation with many other institutional actors . . . ." Id.

Therefore, in order to ensure that the appropriate deference is afforded to the agency decisionmakers asserting the deliberative process privilege in the present action, and to apply the balancing test which governs the disclosure of documents where the deliberative process privilege may apply, **on or before March 10, 2004**, CMS shall submit to this Magistrate Judge for her *in camera* review the seventeen documents at issue. CMS shall submit two copies of these documents, one unredacted copy and one proposed redacted copy of each of the seventeen documents (if possible).

For the reasons stated above, defendants' Motion for Order to Compel Production of Documents (Dkt. # 83) is granted to the limited extent that Court orders an *in camera* review.

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989) **(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 27th day of February, 2004.

_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge