## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

COMMUNITY HEALTH CENTER, INC.   :   CIVIL ACTION NO 3:01CV146(JBA)
    Plaintiff

v.                                                          :

PATRICIA WILSON-COKER, J.D., M.S.W.
Commissioner of the State of
Connecticut Department of
Social Services
    Defendant                                 :   August 10, 2001

### Affidavit of David Worgo

I, David Worgo, having been sworn, depose and say:

1. I am over eighteen years of age and believe in the obligation of an oath.

2. I am employed by the Department of Health and Human Services, specifically the Centers for Medicare & Medicaid Services ("CMS," formerly the Health Care Financing Administration, or "HCFA").

3. I have worked for CMS for thirteen years in different capacities.

4. For ten years, I have been responsible for coverage and payment issues pertaining to the Rural Health Clinic (RHC) and Federally Qualified Health Center (FQHC) programs under Medicaid and Medicare.

5. My current position, which I have had for the past four years, focuses on developing reimbursement policy for Medicare-covered services provided by FQHCs and RHCs.

6. I have worked with issues revolving around the use of productivity standards, also known as screening guidelines, in both Medicaid and Medicare reimbursement of RHCs.

Exhibit B

7. In 1978, CMS established, as part of its Medicare and Medicaid reimbursement methodology for RHCs, screening guidelines (screens) for physicians and other health professionals. They were established to assess the reasonableness of the productivity of the clinic's health care staff. The specific screens implemented for the RHC program were comparable to those used in connection with payment of services furnished by federally funded health centers (FFHCs), the predecessors of the FQHCs. CMS's experience with using the screens for FFHCs showed them to be reasonable.

8. The RHC productivity screens were published in the Federal Register on September 21, 1978.

9. The productivity screen in 1978 for physicians was at least three visits per hour per physician for rural health services.

10. In 1980, HCFA issued a proposed rule revising the productivity screen for clinic productivity to 4,200 visits per physician per year, which is 2.2 visits per hour per physician for rural health services provided at the clinic.

11. CMS adopted the Health Resources and Services Administration (HRSA) productivity screens for use in the Medicare program to ensure that clinics were reimbursed for no more than the reasonable costs of providing services. CMS concluded in 1980 that these screens were reasonable and consistent with estimates of the actual average productivity of clinics reporting their costs and utilization to CMS.

12. In proposing the 4,200-visit productivity screen in 1980, CMS recognized that not all RHCs may be able to meet the productivity standard and established a waiver provision to act as a safety net for providers who could present reasonable justification for not meeting the standard.

13. In a Final Notice issued in the Federal Register on December 1, 1982, the revised productivity screens were established for RHCs.

14. On June 12, 1992, CMS published a final rule with comment period regarding payment for FQHC services under the Medicare Program. 57 Fed. Reg. 24961 (June 12, 1992).

15. The Final FQHC Rule with Comment Period applied the RHC payment methodology, an all-inclusive rate, for payment to FQHCs. The RHC all-inclusive rate is subject to tests of reasonableness, which include productivity screens. The Preamble section of the final rule with comment period provides that FQHCs were to be subject to the same productivity screening guidelines as RHCs.

16. The 4,200-visit screens for physicians is national and applies to all FQHCs and RHCs that participate in the Medicare program.

17. CMS was aware in July of 1993 that the HRSA was eliminating the use of productivity screens beginning in Fiscal Year 1994 for its grant-funded health centers.

18. CMS continues to use the productivity screens for physicians in FQHCs and RHCs because our experience has shown that their use is reasonable and effective in promoting efficiency of the clinic's health care staff.

19. As stated above, CMS established a waiver provision to act as a safety net for providers who could present reasonable justification for not meeting the standard. Despite the fact that there are several thousand participating Medicare RHCs and FQHCs, we are not aware that more than a few providers have pursued a waiver of the productivity screens.

20. No data has been presented to HCFA to indicate that our current productivity screens for physicians and nonphysician practitioners are unreasonable.

David Worgo

STATE OF MARYLAND    )
                     )
COUNTY OF BALTIMORE  )

Sworn to me this 10th day of August, 2001.

Karen A. Lisle
Notary Public
My Commission Expires
Sept. 1, 2005