# EXHIBIT A

COMMUNITY HEALTH CENTER                                    RHONDA RHODES
VS. PATRICIA WILSON-COKER, ET AL.                     SEPTEMBER 25 , 2003

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x

COMMUNITY HEALTH CENTER, INC.,:

        Plaintiff,        :

  -vs-                         : CHANCERY NO. 172862

PATRICIA WILSON-COKER, J.D.,   :

M.S.W., COMMISSIONER OF THE    :

STATE OF CONNECTICUT           :

DEPARTMENT OF SOCIAL SERVICES,:

        Defendant.        :

- - - - - - - - - - - - - - - - x

                Baltimore, Maryland

                Thursday, September 25, 2003

Deposition of:

                RHONDA RHODES

    A witness, called for examination by

counsel for the plaintiff, pursuant to notice, at

7500 Security Boulevard, Baltimore, Maryland,

beginning at 1:38 p.m., before JOSEPH A. INABNET, a

Court Reporter and Notary Public in and for the

State of Maryland at Large.

COMMUNITY HEALTH CENTER                                    RHONDA RHODES
VS. PATRICIA WILSON-COKER, ET AL.                     SEPTEMBER 25 , 2003

Page 4

```
1    Thereupon,

2                          RHONDA RHODES

3          A witness, called for examination by

4    counsel for the plaintiff, having been first duly

5    sworn by the notary public, was examined and

6    testified as follows:

7          EXAMINATION BY COUNSEL FOR THE PLAINTIFF

8    BY MR. FELDSMAN:

9          Q.    Ms. Rhodes, would you please indicate

10   your name and where you are currently employed?

11         A.    Rhonda, R-H-O-N-D-A, Sturgill,

12   S-T-U-R-G-I-L-L, Rhodes, R-H-O-D-E-S.

13               And I am employed with the Centers for

14   Medicare and Medicaid Services.

15         Q.    Your position there is what?

16         A.    I am the director of the Division of

17   Benefits, Coverage, and payment, and the Family and

18   Children's Health Programs Group in the Center for

19   Medicaid State Operations.

20         Q.    And you work for the Medicaid program.

21   Is that correct?

22         A.    Correct.  CMSO is the Medicaid portion of
```

COMMUNITY HEALTH CENTER                           RHONDA RHODES
VS. PATRICIA WILSON-COKER, ET AL.              SEPTEMBER 25, 2003

Page 44

1       It would have had to have been changed
2   through another issuance.
3       The Qs and As with regard to caps and
4   screens reiterated longstanding policy, which was
5   enunciated in this letter.
6       To repudiate longstanding policy, it
7   would not take the form of a Q and A. It would
8   take the form of a new policy guidance.
9       Q.   Who would be responsible in the CMS
10  bureaucracy for generated that kind of policy
11  guidance?
12      A.   The state Medicaid director letters?
13      Q.   Yeah.
14      A.   They are generated at the staff level.
15      Q.   So in theory, if your office felt screens
16  were unfair or undoable, your office could have at
17  least generated a letter?
18      A.   Correct.
19      Q.   And yet you didn't do it?
20      A.   We did not.
21      Q.   Why not?
22      A.   We did not see any reason to overturn the

COMMUNITY HEALTH CENTER                           RHONDA RHODES
VS. PATRICIA WILSON-COKER, ET AL.                 SEPTEMBER 25 , 2003

Page 45

1  current policy.
2      Q.   Was there no one you consulted with who
3  said the current policy who was critical of the
4  current policy on caps and screens?
5      A.   Actually, no.
6      Q.   The National Association of Community
7  Health Centers told you caps and screens were
8  hunky-dorey?
9      A.   In a communication we received from them,
10 they actually stated, yes, that caps and screens
11 were fine in terms of computing the average costs
12 for '98, '99, yes.
13     Q.   They took no issue with the use of caps
14 and screens?
15     A.   Not in that document that they
16 transmitted to us, no.
17     Q.   Who signed the document?  Do you
18 remember?
19     A.   No, I don't remember who signed it.
20     Q.   So no one was critical of caps and
21 screens.
22          Is that what you are saying?

1    in conjunction with the old language and whether or

2    not we should disallow those federal funds --

3        Q.    All right.

4        A.    -- if a finding of noncompliance is

5    found.

6        Q.    All right.  And suppose the state in this

7    hypothetical again, the state jumps the gun and is

8    harsher on providers in a reimbursement manner than

9    its prior plan.

10            The providers, do you direct the state to

11   pay providers the difference?

12       A.    In other words, if we found a state out

13   of compliance with the --

14       Q.    Yeah.  Well, the state would be out of

15   compliance if it implemented before it amended its

16   plan, would it not?

17       A.    We would do an investigation.  It's not a

18   given that they are automatically out of

19   compliance.

20       Q.    I'm asking you to assume that they would

21   be.

22       A.    If we found them out of compliance --

COMMUNITY HEALTH CENTER                    RHONDA RHODES
VS. PATRICIA WILSON-COKER, ET AL.          SEPTEMBER 25 , 2003

Page 58

```
 1   what's the question again if we found them out of
 2   compliance?
 3        Q.   Let's say they -- let's have the result,
 4   there was a -- a hospital lost a thousand dollars
 5   as a result of the state in effect jumping the gun
 6   and not getting a plan amendment.
 7             Would you direct the state to reimburse
 8   the hospital a thousand dollars?
 9        A.   That's going to be on a case-by-case
10   basis.
11             It would not be in general -- I couldn't
12   answer that in a general way.
13        Q.   And what would determine whether there
14   would be such a direction?
15        A.   The facts of the matter at hand.
16        Q.   Would that be your responsibility?  Your
17   office's responsibility?
18        A.   In conjunction -- the region -- the
19   regional office would become involved.  We would
20   become involved, yes, as well as another group
21   within the Center for Medicaid and State
22   Operations, which is the Finance Systems Budget
```

### CERTIFICATE OF NOTARY PUBLIC

I, Joseph A. Inabnet, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me in Stenotype and thereafter reduced to typewriting under my supervision; that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and further, that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.



Joseph A. Inabnet, Notary Public
for the State of Maryland

My Commission Expires:  January 29, 2007