UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| COMMUNITY HEALTH CENTER, INC., *et al.* )<br>)<br>*Plaintiffs*, )<br>)<br>v. )<br>)<br>)<br>PATRICIA WILSON-COKER, J.D., M.S.W., )<br>COMMISSIONER OF THE )<br>STATE OF CONNECTICUT )<br>DEPARTMENT OF SOCIAL SERVICES )<br>)<br>*Defendant.* )<br>_____ ) | No. 3:01CV146 (JBA)<br><br><br><br><br><br>November 14, 2005 |

### LOCAL RULE 56(a)(2) STATEMENT

Plaintiffs, Community Health Center, Inc., *et al.*, submit this Local Rule 56(a)(2) Statement in response to Defendant's October 26, 2005 motion for summary judgment and accompanying Local Rule 56(a)(1) Statement.

1. Plaintiffs admit the facts asserted in ¶ 1.
2. Plaintiffs admit the facts asserted in ¶ 2.
3. Plaintiffs admit the facts asserted in ¶ 3.
4. Plaintiffs admit the facts asserted in ¶ 4.
5. Plaintiffs admit the facts asserted in ¶ 5.
6. Plaintiffs admit the fact asserted in ¶ 6.

7.    Plaintiffs admit the fact that there is a letter to State Medicaid Directors dated January 19, 2001, which provides as stated in ¶ 7.

8.    Plaintiffs admit that on March 29, 2001, Defendant submitted State plan amendment 01-0002. The assertions in ¶ 8 that State plan amendment 01-002 demonstrates "[Defendant's] compliance with the new federal law," and to the extent that the "mechanism by which FQHC rates would be calculated" contained in the addendum to the State plan amendment is "in accordance with the new law" are legal conclusions; however, to the extent that they are deemed statements of fact, they are denied.

9.    Plaintiffs admit that on or about April 12, 2001, Defendant submitted a revised addendum to State plan amendment 01-002. The assertion in ¶ 9 that the plan amendment was submitted to reflect, technical, non-substantive changes is a legal conclusion and is not appropriate for inclusion in a statement of material facts. To the extent that it is deemed a statement of fact, it is denied. Plaintiffs also dispute the materiality of such facts to a decision in this case.

10.   Plaintiffs admit that a revised addendum to State plan amendment 01-002 was submitted; however, Plaintiff disputes the materiality of such facts to a decision in this case.

11.   Plaintiffs admit the facts asserted in ¶ 11; however, Plaintiffs dispute the materiality of such facts to a decision in this case.

12.   Plaintiffs admit the facts asserted in ¶ 12.

13.   Plaintiffs are without sufficient knowledge to admit or deny that Connecticut has applied a 4200 visit physician productivity screen to FQHC rate determinations since the enactment of Conn. Gen. Stat. § 17b-245a in 1996. Plaintiffs admit that Conn. Gen. Stat. § 17b-245a provides as stated. Plaintiffs dispute the materiality of these facts to a decision in this case.

14.     Plaintiffs admit that the regulation cited by Defendant provides that "Tests of reasonableness for rural health clinic cost and utilization. Tests of reasonableness authorized by sections 1833(a) and 1861(v)(1)(A) of the Act may be established by CMS or the carrier with respect to direct or indirect overall costs, costs of specific items and services, or costs of groups to items and services. Those tests include, but are not limited to screening guidelines . . ." 42 C.F.R. 405.2468(c).

15.     Plaintiffs admit that the Department of Health and Human Services' ("HHS") 1992 preamble to the regulations reflected in 42 C.F.R. Part 405 provided for "productivity screening guidelines intended to identify situations where costs will not be allowed without acceptable justification by the clinic . . . " 57 Fed. Reg. 24, 961 at 24, 967. The preamble refers to a "productivity guideline" of 4,200 visits per year per full-time equivalent physician. *Id.*

16.     Plaintiffs admit there is a 4,200-visit screening guideline in the Rural Health Clinic and Federally Qualified Health Center [Medicare] Manual ("Medicare Manual") for physicians in FQHCs and RHCs. Plaintiffs lack sufficient knowledge to admit or deny whether CMS uses the 4,200 productivity screen or guideline for all FQHCs. Plaintiffs dispute the materiality of such facts to a decision in this case.

17.     Plaintiffs admit that productivity screening guidelines for Rural Health Clinics ("RHCs") were published in the Federal Register on September 21, 1978; however, plaintiffs dispute the materiality of such facts to a decision in this case.

18.   Plaintiffs admit that defendant has accurately quoted an excerpt of the 1978 Federal Register notice in which the productivity screening guidelines for RHCs were announced.

19.   Plaintiffs admit that in 1980 HCFA issued a proposed productivity screen for RHC productivity of 4,200 visits per physician per year. Plaintiffs deny that the 4,200 screen results in 2.2 visits per hour per physician, since it would depend on the number of hours a physician works and the nature of his/her practice. (For example, a physician attending to a pregnant woman about to deliver at a hospital is forced to spend hours on what is only counted as one visit.) In addition, Plaintiffs dispute the materiality of such facts to a decision in this case.

20.   Plaintiffs admit that the selected quotations are accurate quotations from the 1980 notice of proposed rulemaking - - not the final rulemaking. In any event, plaintiffs dispute the materiality of the facts asserted by Defendant to a decision in this case.

21.   Plaintiffs admit that the Final Notice issued in the Federal Register on December 1, 1982 established revised "productivity screening guidelines" for RHCs. Plaintiffs deny that that a waiver provision was established, since neither the relevant regulations nor the preamble thereto refers to a "waiver." The Final Notice states in this regard that a clinic "may ask the carrier to waiver application of the guidelines for a reporting period." 47 Fed. Reg. 54166. Further, Plaintiffs dispute the materiality of such facts to a decision in this case.

22.   Plaintiffs admit that the selected quotation is an accurate excerpt of the 1982 Final Notice applicable to RHCs. Plaintiffs dispute the materiality of such facts to a decision in this case.

23.   Plaintiffs admit that the selected quotation is an accurate excerpt of a response to comments contained in the 1982 Final Notice applicable to RHCs. Plaintiffs dispute the materiality of such facts to a decision in this case.

24.     Plaintiffs admit that the selected quotation is an accurate excerpt of a response to a comment contained in the 1982 Final Notice applicable to RHCs. Plaintiffs dispute the materiality of such facts to a decision in this case.

25.     Plaintiffs deny the facts stated in paragraph 25. While Mr. Worgo testified that HCFA performed an analysis of RHC data relative to productivity screens, he did not know if the stuffy or analysis resulted in any kind of report or written document. Depo. of David Worgo at 93-94. In fact, he was not with HCFA when the Federally Funded Health Center ("FFHC") program was operational and Mr. Worgo's testimony concerning the study of productivity screens relative to the RHC program is based on his reading of regulations and discussions with current/former CMS and HRSA personnel. Worgo Depo. at 97-98. Plaintiffs do not know whether the HCFA analysis is reflected in statements made by HCFA relative to the 1980 proposed rule and the 1982 Final Notice. Plaintiffs further dispute the materiality of such facts to a decision in this case.

26.     Plaintiffs admit that the Social Security Act was amended in 1990 by adding "Federally qualified health center services" to the definition of "medical and other health services" offered under the Medicare program. Plaintiffs deny that services provided by physicians, physician assistants, nurse practitioners qualified clinical social workers and certain visiting nurse services are virtually identical. 57 Fed. Reg. 24961, 24962 (June 12, 1992). Plaintiffs further dispute the materiality of such facts to a decision in this case.

27.     Plaintiffs admit the facts contained in paragraph 27. They dispute, however, the materiality of such facts to a decision in this case.

28.     Plaintiffs admit that as part of the 1992 final rule with comment period HCFA states that it is adopting the RHC payment methodology for FQHCs in the Medicare program. The same final rule with comment period provides that, "[r]elated Medicaid rules are being developed in a separate rulemaking document." 57 Fed. Reg. 24967 (June 12, 1992). Plaintiffs further dispute the materiality of such facts to a decision in this case.

29.     Plaintiffs admit that the defendant has accurately quoted an excerpt of the 1992 final rule with comment period applicable to RHCs in the Medicare program. Plaintiffs dispute the materiality of such facts to a decision in this case.

30.     Plaintiffs admit that the defendant has accurately quoted an excerpt of the 1992 final rule with comment period applicable to RHCs in the Medicare program. Plaintiffs dispute the materiality of such facts to a decision in this case.

31.     Plaintiffs admit that Mr. Dobyski testified that responses to the comments were written sometime between July and October of 1992. Plaintiffs dispute the materiality of such facts to a decision in this case.

32.     Plaintiffs admit that Mr. Worgo has testified that HCFA was aware in 1993 that HRSA was eliminating the use of productivity screens beginning in Fiscal Year 1994 for its grant-funded health centers. Plaintiffs further admit that HCFA/CMS because aware of this by a fax transmittal sometime in 1993. Plaintiffs dispute the materiality of such facts to a decision in this case.

33.     Plaintiffs admit that Mr. Worgo testified that HCFA continued to use the physician productivity screens for FQHCs and RHCs because "experience has shown that their use is reasonable and effective in promoting efficiency of the clinic's health care staff." Worgo Aff. at

18. Plaintiffs further admit that Mr. Worgo testified that HCFA/CMS continued to use the productivity screen because the screens had been applied in the Federally Funded Health Center program which existed in 1970. Worgo Depo. at 91-94, 98. Even though he was not involved at the time, Mr. Worgo testified that it was his understanding that HCFA made a specific determination using clinic data from the late 1970s or early 1980s that those screens were reasonable and effective. *Id.* HCFA/CMS also considered the fact that no reported waiver requests were submitted by any FQHC and a limited number of requests were submitted by RHCs. *Id.* Plaintiffs dispute the materiality of such facts to a decision in this case.

34. The statement in paragraph 34 is a conclusion of law; however, plaintiffs admit that Ms. Rhodes testified that there ". . .is no formal process for accepting HRSA's position over ours." Rhodes Depo. at 36: 1 – 2. Plaintiffs dispute the materiality of any facts contained in paragraph 34 to a decision in this case.

35. Plaintiffs admit the facts contained in paragraph 35. Plaintiffs dispute the materiality of any facts contained in paragraph 35 to a decision in this case.

36. Plaintiffs admit that the Connecticut regulations provide for a waiver; however, Plaintiffs dispute the materiality of this fact to a decision in this case.

37. Plaintiffs admit the assertion in ¶ 37 that Community Health Center, Inc. ("CHCI") has not formally applied for a waiver. Parties' counsel have discussed whether CHCI would be granted a waiver and what standard would be applied, however. Plaintiffs admit that four of the plaintiffs herein have applied for a waiver of the productivity standard and final administrative decisions on those waivers are pending. Plaintiffs dispute the materiality of all factual assertions in ¶ 37.

## DISPUTED ISSUES OF MATERIAL FACT

It is plaintiffs' position that there are no issues of *material* fact that are at issue in this case. However, as demonstrated above, plaintiffs do dispute whether many of the facts included in Defendant's October 26, 2005 Local Rule 56(a)(1) Statement are material. For these reasons, it is plaintiffs' position that summary judgment is appropriate.

Respectfully submitted,

Richard R. Brown
Fed. Bar No. 00009
Brown, Paindiris & Scott
100 Pearl Street
Hartford, CT 06103
(860)522-3343 (telephone)
(860)522-2490 (facsimile)

and

_____
James L. Feldesman
Kathy S. Ghiladi
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., Second Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)

*Counsel for Plaintiffs*

## **CERTIFICATION**

This is to certify that a copy of the foregoing was sent by Federal Express overnight mail on November 14, 2005 to:

Lauren M. Nash
Assistant U.S. Attorney
P.O. Box 1824
New Haven, CT 06508

Thomas J. Ring
Assistant Attorney General
P.O. Box 120
Hartford, CT 06141-0120

Marilyn B. Fagelson, Esq.
Murtha Cullina LLP
2 Whitney Avenue
New Haven, CT 06510

Richard R. Brown
Brown, Paindiris & Scott
100 Pearl Street
Hartford, CT 06103

_____
James L. Feldesman